UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLEXPORT, INC.,<br><br>         Plaintiff,<br><br>v.<br><br>WESTERN GLOBAL AIRLINES, LLC,<br><br>         Defendant. | Case No. 1:19-cv-06383 (PGG)<br><br>**ANSWER** |

Defendant Western Global Airlines, LLC ("WGA"), by and through its attorneys, Brown Rudnick LLP, alleges as follows:

## PRELIMINARY STATEMENT

WGA, a U.S. based global air freight airline, entered into an Aircraft Services Agreement ("Agreement") with Flexport, Inc. ("Flexport"), a global freight forwarder, on January 24, 2018 for a three-year term. WGA provides full service Charter and "ACMI" (*i.e.*, aircraft, crew, maintenance, and insurance) airline services to its customers, operating a worldwide network on behalf of leading airlines, express companies, freight forwarders, integrators, and the U.S. Government. WGA owns and operates a fleet of 14 aircraft, including 747-400 BCF and MD-11 freighter aircraft. On January 24, 2018, WGA agreed to charter one of its 747-400 BCF freighter aircraft to Flexport to fly weekly air routes for Flexport between Hong Kong and Los Angeles, from April 1, 2018 through March 31, 2021. On May 7, 2019, Flexport wrongfully and pretextually sought to terminate the Agreement based on a false and contrived basis, as a result of which WGA is entitled under the Agreement to substantial damages.

At all relevant times, WGA has fully complied with its obligations under the Agreement, including its obligation to provide on-time performance, WGA diligently addressed any and all

issues as they arose fully in accordance with the Agreement, and fully in compliance with applicable industry standards and as *required* by the Federal Aviation Administration ("FAA") and other relevant regulations and procedures. Pursuant to the terms of the Agreement, WGA's on-time performance during the March-April 2019 two-month rolling period was 100%. When WGA refused to consent to Flexport's unreasonable demands to modify material terms of the Agreement, Flexport purported to improperly terminate the Agreement on false and contrived grounds on May 7, 2019. As a result of Flexport's purported termination, Flexport is obligated under the Agreement to pay WGA, at a minimum, in full for the "remaining balance of flights at the ACMI Revenue per Full Rotation ($US 225,678.00) in accordance with the Terms and Conditions of [the] Agreement" through March 31, 2021.

Per Section G (G.1 and G.7) and Section L.2 (which refers to Section G) of the Agreement, WGA was in full compliance with all its contractual obligations, including any on time performance obligations during the March-April 2019 two-month rolling period. Flexport had no right to terminate for the alleged delays alluded to in its Complaint and is responsible for payments per Section L.1 of the Agreement. When the Parties' Agreement is taken into account, not a single alleged delay during March-April 2019 was a "Carrier Controllable Delay" and WGA's performance was in fact 100% during the period alleged by Flexport. It is Flexport that is in material breach of its contractual obligations, and Flexport has asserted a bogus pretextual basis to try to avoid its contractual obligations. WGA, which is committed to providing the highest quality of service to all its clients, intends to hold Flexport fully liable, in the arbitration forum to which the Parties agreed, for the damages it has caused WGA, including that Flexport owes WGA for all remaining sums due under the Agreement, which runs through 2021.

As Flexport is well aware, under the Parties' Agreement, the Parties were required: (i) under Section O.2 to negotiate in good faith in the event a dispute arises under the Agreement, (ii) then, if such "Negotiation" period does not resolve the dispute, mediate pursuant to Sections O.3, O.4, O.5, and O,6 and (iii) finally, if mediation is not successful, to arbitrate any dispute pursuant to Sections O.7, O.8, O.9, O.10, O.11, O.12, and O.13.[1] WGA sought to comply with the pre-dispute provisions of the Agreement, but Flexport willfully disregarded and flouted such contractual procedures; Flexport is in breach of its obligations to utilize such pre-arbitration procedures, and further, while aware of the Agreement's arbitration requirement, failed to proceed to arbitration.

WGA intends to prove these facts, and seek substantial damages from Flexport, in contractually-required arbitration proceedings before the American Arbitration Association ("AAA").[2]

## RESPONSE TO COMPLAINT

In light of the Agreement's arbitration requirements, WGA provides the following Answer to the Complaint without prejudice to or waiver of such arbitration rights:

1. Denies knowledge or information sufficient to respond to the allegations in paragraph 1 of the Complaint.

2. Admits the allegations in paragraph 2 of the Complaint.

3. Denies the allegations in paragraph 3 of the Complaint, and avers: (i) the Parties intended to designate the AAA as the sole dispute resolution forum; (ii) the Agreement contains

---

[1] If both Parties agree to proceed directly to arbitration in lieu of mediation, the Agreement permits, under Section O.3, that "Arbitration may be initiated immediately, in lieu of Mediation."

[2] WGA has commenced such AAA proceeding against Flexport, in accordance with the Agreement.

12 detailed provisions requiring the Parties to first negotiate, then mediate, and, if the dispute remains unresolved, arbitrate any dispute; and (iii) the Agreement, in Section O.7, states that "[s]ubject to the duty to Negotiate and Mediate set forth above, all disputes, claims, or causes of action arising out of or relating to this Agreement or the validity, interpretation, breach, violation, or termination thereof not resolved by Mediation, shall be *finally and solely* determined and settled by Arbitration to be conducted in the State of New York, USA, in accordance with the Commercial Arbitration Rules of the AAA in effect at the date of Arbitration." (emphasis supplied).  WGA further avers that the inclusion of the isolated provision in Section O.1 was a scrivener's error, and should be disregarded, *inter alia*, in light of Sections O.2 - O.13.

4. Denies the allegations in paragraph 4 of the Complaint, and avers the Agreement provides for arbitration before the AAA as the final and sole resolution mechanism of any dispute between the Parties.

5. Upon information and belief, denies the allegations in paragraph 5 of the Complaint.

6. Upon information and belief, admits the allegations in paragraph 6 of the Complaint.

7. Denies the allegations in paragraph 7 of the Complaint, and avers that WGA provides both the aircraft and aircraft service.

8. In response to paragraph 8 of the Complaint, refers to the Agreement for its terms and conditions.

9. Denies the allegations in paragraph 9 of the Complaint.

10. Denies the allegations in paragraph 10 of the Complaint, and avers, *inter alia*, that: (i) WGA has at all times diligently and properly operated and maintained its fleet of aircraft in accordance with industry standards, pursuant to manufacturer specifications and in strict compliance with FAA Part-121 and Department of Defense ("DOD") regulations and requirements; (ii) WGA has been granted by Boeing Tier 1 customer status, is one of the few airlines with its own in-house heavy maintenance facility, and is proud of the unparalleled expertise in aircraft maintenance throughout its organization, up to and including its President and CEO; (iii) WGA's general maintenance reliability for the past 13 months has exceeded 96% as reported to the FAA; (iv) as an FAA Part-121 and DOD carrier, WGA is subject to strict regulatory oversight, has a perfect safety record flying to 356 airports in 130 countries on six continents, and has never received a notification of maintenance violation in all its years of operation; and (v) in 2018, the DOD recognized WGA's excellent service reliability and rated WGA's freight transportation performance in the highest two categories, flying over 270 missions, including to austere and remote locations around the globe.

11. Denies the allegations in paragraph 11 of the Complaint, and avers that: (i) the Parties planned to send in the 747-400 for its scheduled C Check in February 2019, as required by the FAA to be performed every two years; (ii) the Agreement contemplated the MD-11 freighter as a temporary replacement, to be flown at a lower price-per-rotation rate; and (iii) WGA, though not required by the Agreement, accommodated Flexport via further price-per-rotation reductions—far below market rates for MD-11 service—during the time period in which the MD-11 replaced the 747-400.

12. Denies the allegations in paragraph 12 of the Complaint.

13. Denies the allegations in paragraph 13 of the Complaint.

14. Denies the allegations in paragraph 14 of the Complaint.

15. Denies the allegations in paragraph 15 of the Complaint.

16. Denies the allegations in paragraph 16 of the Complaint.

17. Denies the allegations in paragraph 17 of the Complaint.

18. Denies the allegations in paragraph 18 of the Complaint.

19. Denies the allegations in paragraph 19 of the Complaint.

20. Denies the allegations as to alleged "service failures" by WGA, and otherwise knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Flexport's "business" in paragraph 20 of the Complaint.

21. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 21 of the Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 22 of the Complaint.

23. Denies the allegations in paragraph 23 of the Complaint.

24. Denies the allegations in paragraph 24 of the Complaint, and avers that: (i) WGA, at all times, was fully in compliance with its obligations under the Agreement; and (ii) WGA, though not required by the Agreement, provided Flexport numerous accommodations.

25. Denies the allegations in paragraph 25 of the Complaint.

26. Denies the allegations in paragraph 26 of the Complaint.

27. In response to paragraph 27 of the Complaint, refers to the Agreement for its terms and conditions, and avers that Flexport intentionally omitted from paragraph 27 the final sentence of Section L.2, which refers to Section G's definition of schedule reliability and operational performance.

28. In response to the allegations in paragraph 28 of the Complaint, refers to the Agreement for its terms and conditions.

29. Denies the allegations in paragraph 29 of the Complaint.

30. Denies the allegations in paragraph 30 of the Complaint.

31. Denies the allegations in paragraph 31 of the Complaint, and avers that: (i) the alleged "OTP" percentage does not reflect the Agreement's definition of "schedule reliability rate" and "Carrier-Controllable Delay"; and (ii) Flexport wrongfully and pretextually based its termination of the Agreement by claiming to use such non-contractual alleged data as its purported basis for termination.

32. Denies the allegations in paragraph 32 of the Complaint, and avers that: (i) the alleged "OTP" percentage does not reflect the Agreement's definition of "schedule reliability rate" and "Carrier-Controllable Delay"; and (ii) Flexport wrongfully and pretextually based its termination of the Agreement by claiming to use such non-contractual alleged data as its purported basis for termination.

33. Denies the allegations in paragraph 33 of the Complaint, and avers that: (i) the alleged "OTP" percentage does not reflect the Agreement's definition of "schedule reliability rate" and "Carrier-Controllable Delay"; and (ii) Flexport wrongfully and pretextually based its termination of the Agreement by claiming to use such non-contractual alleged data as its purported basis for termination.

34. Denies the allegations in paragraph 34 of the Complaint.

35. Denies the allegations in paragraph 35 of the Complaint.

36. Denies the allegations in paragraph 36 of the Complaint.

37. Denies the allegations in paragraph 37 of the Complaint.

38. Denies the allegations in paragraph 38 of the Complaint.

39. In response to the allegations in paragraph 39 of the Complaint, WGA fully complied with its obligations under the Agreement, and otherwise denies Flexport's allegations.

40. In response to the allegations in paragraph 40 of the Complaint, WGA fully complied with its obligations under the Agreement, and otherwise denies Flexport's allegations.

41. In response to the allegations in paragraph 41 of the Complaint, WGA fully complied with its obligations under the Agreement, and otherwise denies Flexport's allegations.

42. Denies the allegations in paragraph 42 of the Complaint.

43. In response to the allegations in paragraph 43 of the Complaint, repeats and realleges paragraphs 1-42.

44. Denies the allegations in paragraph 44 of the Complaint.

45. Denies the allegations in paragraph 45 of the Complaint.

46. Denies the allegations in paragraph 46 of the Complaint, and refers to the alleged "OTP Reports" for their terms and conditions.

47. Denies the allegations in paragraph 47 of the Complaint.

48. Denies the allegations in paragraph 48 of the Complaint.

49. In response to paragraph 49 of the Complaint, admits that such reports cannot be used to measure performance metrics under the Agreement.

50. In response to paragraph 50 of the Complaint, admits that WGA was in full compliance at all relevant times with its contractual obligations under the Agreement, and that WGA's contractual schedule reliability far exceeded 80% during such period.

51. In response to the allegations in paragraph 51 of the Complaint, WGA fully complied with its obligations under the Agreement.

52. In response to the allegations in paragraph 52 of the Complaint, refers to such "invoices" for their terms and conditions and avers that WGA fully complied with its obligations under the Agreement.

53. Denies the allegations in paragraph 53 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

54. Flexport has failed to file a proceeding in the correct forum, since the Parties' Agreement requires arbitration before the AAA, as provided by Section O.7: "[A]ll disputes, claims, or causes of action arising out of or relating to this Agreement or the validity, interpretation, breach, violation, or termination thereof not resolved by Mediation, shall be finally and solely determined and settled by Arbitration to be conducted in the State of New York, USA, in accordance with the Commercial Arbitration Rules of the AAA in effect at the date of the Arbitration."

### SECOND AFFIRMATIVE DEFENSE

55. The Complaint fails to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

56. The Southern District of New York is an improper venue for this dispute.

### FOURTH AFFIRMATIVE DEFENSE

57. Flexport breached the Agreement's good faith negotiation, mediation, and arbitration requirements.

### FIFTH AFFIRMATIVE DEFENSE

58. The Court does not have personal jurisdiction over the Defendant.

### SIXTH AFFIRMATIVE DEFENSE

59. The Court does not have subject matter jurisdiction over this dispute.

## SEVENTH AFFIRMATIVE DEFENSE

60. Flexport failed to properly serve WGA.

## EIGHTH AFFIRMATIVE DEFENSE

61. Flexport's alleged "declaratory judgment" claim seeks an advisory opinion and is non-justiciable.

WHEREFORE, Defendant respectfully requests that the Court:

    a) Dismiss or, alternatively, stay this action, and direct the Parties to arbitration, as required under the Agreement, or

    b) Alternatively, deny the relief requested by Flexport, and dismiss the action with prejudice, and

    c) Award WGA its attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

Dated: August 8, 2019
      New York, New York

Respectfully submitted,
**WESTERN GLOBAL AIRLINES, LLC**

By: /s/ *Sigmund S. Wissner-Gross*
      Sigmund S. Wissner-Gross

**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4930
Fax: (212) 938-2804
swissnergross@brownrudnick.com

*Counsel for Western Global Airlines, LLC*